UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| MAPLEWOOD SENIOR LIVING, LLC, | : | CASE NO.: 1:23-cv-1240 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| M&T INSURANCE AGENCY, INC., | : | |
| Defendant. | : | |

## COMPLAINT

Plaintiff, Maplewood Senior Living, LLC, submits this complaint against the defendant, M&T Insurance Agency, Inc., as follows:

## Parties.

1.      Plaintiff, Maplewood Senior Living, LLC ("Maplewood"), is a limited liability company organized and existing under the laws of the State of Connecticut, with a principal place of business at One Gorham Island, Westport, Connecticut 06880.

2.      Upon information and belief, Defendant, M&T Insurance Agency, Inc. ("M&T"), is a New York corporation with a principal place of business at 285 Delaware Avenue, Suite 4000, Buffalo, NY 14202.

## Jurisdiction and Venue.

3.      The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4.      Maplewood has a single member, Gregory D. Smith, who is a citizen and resident of Connecticut with an address at One Gorham Island, Westport, Connecticut 06880.

5.      Because Maplewood's sole member is a citizen of Connecticut, Maplewood is also a citizen of Connecticut for purposes of diversity jurisdiction.

6.    For diversity jurisdiction purposes, M&T is a citizen of New York because it is incorporated under New York law and its principal place of business is in New York.

7.    Venue is proper in this jurisdiction pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because M&T is deemed to "reside" in this judicial district and because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## Maplewood's Construction Project In New York

8.    Maplewood develops, constructs and operates upscale senior living facilities throughout the United States.

9.    Maplewood developed and constructed such a facility upon real property located at 1802-1810 2nd Ave., New York, New York 10128 known as Inspir (the "Project").

## Maplewood's Special Relationship With M&T

10.    M&T is a retail insurance agency that offers a variety of property and casualty insurance products, customized group benefits, and surety solutions.  M&T holds itself out as specializing in providing such products to clients, like Maplewood, who develop, construct and operate senior living facilities or similar types of construction projects.

11.    According to M&T's website, "[f]or more than 60 years, the knowledgeable insurance professionals at M&T Insurance Agency, Inc. have helped our customers protect assets with a variety of insurance offerings….  We have a long record of meeting our clients' specific needs, thanks to an extensive selection of products and a geographic reach that stretches to all 50 states."

12.    M&T has worked closely as a trusted advisor to Maplewood, making recommendations as to insurance coverages and limits and providing Maplewood with insurance products and other related products.  In doing so, M&T developed specialized knowledge and

confidential information regarding Maplewood's risk tolerance, business practices and operations in developing, constructing and operating its senior living facilities.

13.    M&T held itself out to Maplewood as having the expertise to recommend appropriate insurance products, coverages and other related products to provide the necessary insurance coverage for Maplewood during the development, construction and operation of its senior living facilities throughout the United States.

14.    In making the decision to purchase insurance products and other related products at the recommendation of M&T, Maplewood reasonably relied upon M&T's experience and expertise, as well as M&T's detailed analysis and knowledge of Maplewood's insurance requirements for its business of developing, constructing, and operating senior living facilities throughout the United States.

15.    Maplewood provided M&T with access to its financial information, including but not limited to, the contracts and confidential information relating to its relationships with its capital partners, designers, contractors and others, as well as confidential business information concerning all aspects of its company so that M&T could make detailed recommendations regarding specific insurance products that were best suited for Maplewood, its business, and its risk tolerances.

16.    Maplewood reasonably relied upon M&T and its expertise to "build" insurance products and policies that provided maximum coverage to Maplewood and its related entities.

17.    Maplewood also reasonably relied upon M&T's expertise and advice in assessing and reporting claims that arose during the course of its construction projects, including providing advice on policy terms and conditions governing coverages and claims reporting requirements.

18.    Maplewood further reasonably relied upon M&T's expertise when it advised Maplewood on the required level of insurance to be provided by Maplewood's contractors, design

professionals, and other third parties retained to provide design and constructions services for Maplewood's construction projects.

19.    Based on the foregoing, including, but not limited to: (1) the longstanding relationship and course of dealing between M&T and Maplewood, (2) the ongoing advice that M&T provided to Maplewood concerning the types of insurance products it should purchase for its construction projects, including the coverage amounts provided by the insurance products, (3) the ongoing advice that M&T provided with assessing and reporting claims that arose during the course of Maplewood's construction projects, including the advice M&T provided concerning policy terms and conditions governing coverages and claims reporting requirements, and (4) the confidential business information that Maplewood provided to M&T to assist M&T with customizing insurance products and policies to provide maximum coverage to Maplewood and its related entities, at all times material hereto there existed a special relationship between M&T and Maplewood that gives rise to M&T owing Maplewood a special duty of care.

20.    M&T knew that Maplewood was relying on M&T's experience and expertise as an insurance broker and trusted advisor, including the special relationship between M&T and Maplewood, as well as M&T's detailed analysis and knowledge of Maplewood's insurance requirements for its business of developing, constructing, and operating senior living facilities throughout the United State when Maplewood decided to purchase insurance products and other related products recommended by M&T.

**Maplewood Relied Upon M&T's Advice And Recommendations**
**When It Purchased Insurance For The Project**

21.    In reliance upon M&T's professional advice and expertise, and its special relationship with Maplewood as its insurance broker, Maplewood accepted M&T's recommendations and allowed M&T to broker and procure Maplewood's Builders Risk Policy

No. I08879837 001 (the "Policy") from ACE American Insurance Company ("ACE") for construction of the Project.

22.    M&T was intimately involved with, and provided advice and recommendations on, all aspects of the insurance requirements for the Project and Maplewood reasonably relied on M&T's recommendation that the Policy would provide all necessary and appropriate insurance coverages for the Project.

23.    The Policy contains limits of $115,000,000.00 for physical loss to the Insured Project, as well as limits of $28,149,598.00 for delay in opening per the Delay in Opening Endorsement (Form Number ACE0729).

24.    The Delay in Opening Endorsement provides coverage for "Soft Costs/Additional Expenses sustained as a result of a Delay in completion of the Insured Project caused by action of civil authority that prohibits access to the Insured Project site…due to direct physical Loss to Property, other than at the Insured Project site…caused by or resulting from an insured peril."

25.    The Policy expressly "insures against direct physical Loss to property of every kind and description intended to become a permanent part of, or be consumed in, the construction, fabrication, assembly, installation, erection or alteration of the Insured Project…"

**Maplewood Informed M&T Of A Stop Work Order That Delayed The Project,**
**But M&T Failed To File A Claim Against The Policy And Failed To Advise Maplewood To**
**File A Claim Against The Policy**

26.    On October 10, 2017, the New York City Department of Buildings issued a Stop Work Order ("SWO") to Maplewood's construction manager, Consigli & Associates, LLC ("Consigli"), requiring Maplewood to cease all construction activities at the Project due to damage to adjacent property.

27.    The adjacent property damage was caused by vibrations from pile driving and excavation work at the Project by Consigli.

28.     The SWO constituted an action of civil authority that prohibited all access to the Project, and delayed the critical path for the Project, which resulted in further and ongoing delays and caused Maplewood to incur additional costs.

29.     The original Scheduled Date of Completion for the Project was delayed due to the impact of the SWO, which caused Maplewood to incur additional costs.

30.     Maplewood advised M&T of the SWO as soon as it was issued.

31.     M&T negligently and incorrectly instructed Maplewood to make a direct claim against the contractor controlled insurance program ("CCIP") for the Project, which Maplewood did in reasonable reliance on M&T's recommendation and advice, and its special relationship with M&T.

32.     This advice was incorrect, erroneous, and negligently provided, because the CCIP was not a first party policy and Maplewood had no right under that policy to make a direct claim against the insurer.

33.     M&T's negligent and erroneous instruction to have Maplewood make a direct claim against the CCIP for the Project was grossly negligent.

34.     Although M&T was, or reasonably should have been, familiar with the coverages provided by the Policy, it negligently failed to advise Maplewood to assert a claim with ACE against the Policy, which had coverage for damages suffered by Maplewood as a result of the Project delays associated with the SWO.

35.     M&T's negligent failure to advise Maplewood to assert a claim with ACE against the Policy was grossly negligent.

36.     Because M&T advised Maplewood to make a direct claim against the CCIP for the Project, and because M&T failed to advise Maplewood to assert a claim with ACE against Policy, Maplewood initially did not assert a claim with ACE against the Policy.

37.     Maplewood initially did not assert a claims with ACE against the Policy because it reasonably relied on M&T advice and M&T's special relationship with Maplewood as its insurance broker.

38.     M&T also negligently failed to assert a claim with ACE against the Policy on behalf of Maplewood, despite Maplewood informing M&T of the SWO as soon as it was issued.

39.     M&T's negligent failure to assert a claim with ACE against the Policy on behalf of Maplewood, despite Maplewood informing M&T of the SWO as soon as it was issued, was grossly negligent.

**When Maplewood Provided A Notice Of Claim Against The Policy Because Of The SWO, ACE Rejected The Claim Because It Was Untimely.**

40.     On October 8, 2020, in advance of the expected completion date for the Project, Maplewood again requested and M&T finally provided ACE with a notice of a claim under the Policy, and Maplewood also asserted notice of claim under the Policy (together the "Notice") for costs associated with the delay in opening resulting from physical damage to property located adjacent to the Project.

41.     Maplewood informed ACE that its Soft Costs and Additional Expenses included, but were not limited to, insurance premiums, legal and accounting fees, advertising and promotion expenses, and lease payments, and were more fully itemized in a spreadsheet attached to the Notice.

42.     Maplewood also provided a copy of the Notice to M&T at or about the time it provided the Notice to ACE.

43.     ACE, through Chubb North American Claims, the Sedgewick law firm, and others, subsequently conducted an investigation of the claim.

44.     On September 9, 2021, legal counsel for ACE transmitted a letter denying Maplewood's claim under the Policy (the "Denial Letter").

45.     Maplewood provided a copy of the Denial Letter from ACE denying the claim under the Policy to M&T.

46.     In the Denial Letter, ACE asserted that Maplewood "was aware in November 2017 that the stop work order would, in fact, delay substantial completion of the Insured Project."

47.     ACE concluded that Maplewood "failed to provide ACE with notice of this loss as soon as practicable" pursuant to Part E.12.A. of the Policy.

48.     Part E.12.A. of the Policy provides that the insured "will, as soon as practicable, report in writing to the Company every OCCURRENCE that may give rise to a claim under this policy."

49.     The Policy at Part F.18. further defines "OCCURRENCE" in relevant part as "one originating cause, event, or repeated exposure to the same originating cause, event or incident, or to one series of similar originating causes, events, incidents or repeated exposures to the same originating cause…"

50.     The Policy states that "All such LOSS will be treated as one OCCURRENCE, unless a specific period of time is included in this Policy."

51.     The Denial Letter from ACE further asserted that "this Policy also contains a two-year suit limitation provision," and that any action against ACE was time barred because as of October 8, 2020 "more than two years have passed since Maplewood became aware of the direct physical loss at issue."

52.     Based on the Denial Letter from ACE, it is clear that M&T negligently breached its duty to Maplewood by procuring the Policy, which contained very specific claims and suit period limitations, without ever advising Maplewood of the same.

53.     Based on the Denial Letter from ACE, it is apparent that M&T negligently breached its duty to Maplewood by failing to properly advise Maplewood regarding the insurance coverage available to Maplewood under the Policy for any delay of the Project and by negligently failing to advise Maplewood to make a claim, "as soon as practicable" after the SWO issued, which caused ACE to deny Maplewood's otherwise valid insurance claim.

54.     Based on the Denial Letter from ACE, it is apparent that M&T negligently breached its duty to Maplewood regarding the insurance coverage available to Maplewood under the Policy for any delay of the Project by failing to make a timely claim with ACE "as soon as practicable" after the SWO issued, which caused ACE to deny Maplewood's otherwise valid insurance claim.

55.     Based on the Denial Letter from ACE, it is apparent M&T negligently failed to preserve Maplewood's right to assert its otherwise valid insurance claim in a legal proceeding by allowing the two-year time period set forth in Part E.21 of the Policy to lapse without making a claim, advising Maplewood to make a claim, or otherwise pursuing the insurance coverage that Maplewood was entitled to under the Policy.

56.     Maplewood has had a longstanding and special relationship with M&T whereby Maplewood relied on M&T as its insurance broker to procure insurance for Maplewood and provide professional advice related to the types of coverage available, acceptability and applicability of exclusions, and the process of asserting claims under various insurance policies.

57.     Maplewood has consistently relied on M&T to provide it with advice relating to the Policy and other insurance policies, including advice relating to the Project, the SWO, the Delay in Opening Endorsement, and the timing and manner of making claims in general.

58.     Throughout the relevant time period, Maplewood was in frequent communication with M&T, as evidenced by frequent communications between Maplewood and M&T to ensure that Builders Risk insurance extended beyond the original expiration date of August 1, 2019 and would be available to Maplewood until completion of the Project.

59.     M&T was also well aware of the SWO based upon its efforts and direction that Maplewood submit a claim against the CCIP for the Project.

60.     Because M&T was Maplewood's insurance broker and had a special relationship with Maplewood, and because M&T was responsible for Maplewood's decision to purchase the Policy on M&T's advice and recommendation, once Maplewood timely informed M&T of the SWO as soon as it issued, Maplewood reasonably relied on M&T to properly advise Maplewood as to whether and how it should assert a claim under the Policy.

61.     Because M&T was Maplewood's insurance broker, and had a special relationship with Maplewood, and because M&T was responsible for Maplewood's decision to purchase the Policy on M&T's advice and recommendation, once Maplewood timely informed M&T of the SWO as soon as it issued, Maplewood reasonably relied on M&T to take appropriate steps to timely notify ACE of a claim under the Policy.

62.     M&T's failure to provide Maplewood with timely and accurate advice relating to making a claim under the Policy, and its failure to make a timely claim under the Policy relating to the SWO and Delay in Opening, has left Maplewood unable to collect on millions of dollars in

insurance coverage that it purchased relying on M&T's advice and to which it otherwise would have received.

63.    M&T's failure to provide Maplewood with timely and accurate advice relating to making a claim under the Policy, and its failure to make a timely claim under the Policy relating to the SWO and Delay in Opening, has caused Maplewood to incur significant premium costs for insurance that M&T's actions prevented Maplewood from receiving coverage under.

## COUNT ONE
## Breach of Contract

1-63.    Maplewood repeats and realleges paragraphs 1-63 of the Complaint as if stated in full herein.

64.    M&T held itself out to Maplewood as having the expertise to recommend appropriate insurance products and other related products to provide insurance coverage for Maplewood in developing, constructing and operating its senior living facilities throughout the United States; and to make recommendations and provide advice regarding available coverages and the procedures and timing and other requirements for the submission of claims under those policies.

65.    Maplewood reasonably relied upon M&T's experience and expertise, as well as M&T's detailed review and analysis of Maplewood's business operations and insurance requirements for its business of developing, building, and operating senior living facilities throughout the United States, when it decided to purchase insurance products and other related products at the recommendation of M&T.

66.    In reliance on M&T's professional advice and expertise, Maplewood accepted M&T recommendations, guidance, and advice and allowed M&T to broker and procure the Policy and other policies for Maplewood.

11

67.     M&T entered into a valid and enforceable contract with Maplewood when Maplewood retained M&T to be its insurance broker to recommend and procure appropriate insurance products and other related products for Maplewood's development, construction, and operation of senior living facilities throughout the United States; and to provide Maplewood with advice and guidance regarding the coverages available under those policies and the requirements and procedures for the submission of claims.

68.     M&T entered into a valid and enforceable contract with Maplewood when it agreed to purchase the Policy to provide appropriate insurance coverage for the Project.

69.     M&T breached its contract with Maplewood by procuring the Policy, which contained very specific claims and suit period limitations, without ever advising Maplewood of the same, and by ignoring the requirements to timely make a claim under the Policy and failing to advise or notify Maplewood of these requirements when M&T was informed of the SWO.

70.     M&T further breached its contract with Maplewood by failing to review, investigate, and/or advise Maplewood regarding the insurance coverage available to Maplewood under the Policy for any delay of the Project.

71.     M&T further breached its contract with Maplewood by failing to advise Maplewood as to whether and how it should assert a claim under the Policy once Maplewood timely informed M&T of the SWO as soon as it issued.

72.     M&T further breached its contract with Maplewood by improperly advising Maplewood to make a direct claim against the CCIP for the Project and by not advising Maplewood to assert a claim with ACE against the Policy "as soon as practicable" after the SWO issued.

73.    M&T further breached its contract with Maplewood by failing to assert a claim with ACE against the Policy on behalf of Maplewood, despite Maplewood informing M&T of the SWO as soon as it was issued.

74.    M&T further breached its contract with Maplewood by failing to preserve Maplewood's right to assert its otherwise valid insurance claim in a legal proceeding by allowing the two-year time period set forth in Part E.21 of the Policy to lapse without making a claim, advising Maplewood to make a claim, or otherwise pursuing the insurance coverage that Maplewood was entitled to under the Policy.

75.    M&T's breaches of contract have left Maplewood unable to collect on millions of dollars in insurance coverage that it purchased relying on M&T's advice and to which it otherwise would have received.

76.    As a result of M&T's breaches of contract, Maplewood has been, and continues to suffer damages.

## COUNT TWO
### Negligence

1-76.    Maplewood repeats and realleges paragraphs 1-76 of the Complaint as if stated in full herein.

77.    Maplewood has had a longstanding relationship with M&T whereby M&T has procured insurance products for Maplewood and subsequently provided professional advice related to the types of coverage available, acceptability and applicability of exclusions, and the process and timing of asserting claims under various insurance policies.

78.    Maplewood has consistently relied on M&T to provide it with advice relating to the Policy and others, including advice relating to the Project, the SWO, the Delay in Opening Endorsement, and the timing and manner of asserting claims in general.

79.     As the insurance broker for Maplewood, and because of the special relationship between M&T and Maplewood, M&T owed Maplewood a duty with regards to the insurance products it recommended to Maplewood to provide insurance coverage for Maplewood and its business, including the development, construction and operation of senior living facilities throughout the United States.

80.     As the insurance broker for Maplewood, and because of the special relationship between M&T and Maplewood, M&T owed Maplewood a duty with regard to how it handled insurance claims on behalf of Maplewood, including but not limited to the professional advice and recommendations it provided to Maplewood as to whether and when to file an insurance claim and against which insurance policy the claim should be filed.

81.     Throughout the relevant time period, Maplewood was in frequent communication with M&T, as evidenced by the frequent communications between Maplewood and M&T to ensure that Builders Risk insurance extended beyond the original expiration date of August 1, 2019 and would be available to Maplewood until completion of the Project.

82.     M&T was also aware of the SWO based upon its efforts and direction that Maplewood submit a claim against the CCIP for the Project.

83.     Because M&T was Maplewood's insurance broker, and had a special relationship with Maplewood, and because M&T was responsible for Maplewood's decision to purchase the Policy on M&T's advice and recommendation, once Maplewood timely informed M&T of the SWO as soon as it issued, Maplewood reasonably relied on M&T to properly advise Maplewood as to whether it should assert a claim under the Policy.

84.     Because M&T was Maplewood's insurance broker, and had a special relationship with Maplewood, and because M&T was responsible for Maplewood's decision to purchase the

Policy on M&T's advice and recommendation, once Maplewood timely informed M&T of the SWO as soon as it issued, Maplewood reasonably relied on M&T to take appropriate steps to timely notify ACE of a claim under the Policy; and the timing requirements for submitting a claim under the Policy.

85.    M&T negligently breached its duty as Maplewood's insurance broker by failing to provide Maplewood with timely and accurate advice relating to making a claim under the Policy, and by failing to make a timely claim with ACE under the Policy relating to the SWO.

86.    M&T further negligently breached its duty as Maplewood's insurance broker by procuring the Policy, which contained very specific claims and suit period limitations, without ever advising Maplewood of the same.

87.    M&T further negligently breached its duty as Maplewood's insurance broker by failing to review, investigate, and/or advise Maplewood regarding the insurance coverage available to Maplewood under the Policy for any delay of the Project.

88.    M&T further negligently breached its duty as Maplewood's insurance broker by failing to advise Maplewood as to whether and how it should assert a claim under the Policy once Maplewood timely informed M&T of the SWO as soon as it issued.

89.    M&T further negligently breached its duty as Maplewood's insurance broker by improperly advising Maplewood to make a direct claim against the CCIP for the Project and by not advising Maplewood to assert a claim with ACE against the Policy "as soon as practicable" after the SWO issued.

90.    M&T further negligently breached its duty as Maplewood's insurance broker by failing to assert a claim with ACE against the Policy on behalf of Maplewood, despite Maplewood informing M&T of the SWO as soon as it was issued.

91.    M&T further negligently breached its duty as Maplewood's insurance broker by failing to preserve Maplewood's right to assert its otherwise valid insurance claim in a legal proceeding by allowing the two-year time period set forth in Part E.21 of the Policy to lapse without making a claim, advising Maplewood to make a claim, or otherwise pursuing the insurance coverage that Maplewood was entitled to under the Policy.

92.    M&T's negligence and breach of its duty towards Maplewood has left Maplewood unable to collect on millions of dollars in insurance coverage that it purchased relying on M&T's advice and to which it otherwise would have received.

93.    As a direct and proximate result of M&T's negligence and breach of its duty towards Maplewood, M&T has caused, and will continue to cause, Maplewood to suffer significant damages in an amount to be determined at trial.

## COUNT THREE
### (Breach of Fiduciary Duty)

1-93.    Maplewood repeats and realleges paragraphs 1-93 of the Complaint as if stated in full herein.

94.    Maplewood has had a longstanding and ongoing special relationship with M&T whereby M&T has acted as its insurance broker and procured insurance products for Maplewood as well as provided professional advice related to the types of coverage available, acceptability and applicability of exclusions, and the process and timing for asserting claims under various insurance policies.

95.    Maplewood has consistently relied on M&T to provide it with advice and recommendations relating to the Policy and other insurance policies, including advice relating to the Project, the SWO, the Delay in Opening Endorsement, and the timing and manner of asserting claims in general.

96.     As the insurance broker for Maplewood, and based on the special relationship between M&T and Maplewood, M&T owed Maplewood a fiduciary duty with regards to the insurance products it recommended to Maplewood and a duty to act in Maplewood's best interest and to provide Maplewood with sound and accurate advice regarding coverages for potential claims and the timing and other requirements for the submission of such claims.

97.     As the insurance broker for Maplewood, and based on the special relationship between M&T and Maplewood, M&T owed Maplewood a fiduciary duty with regard to the advice and recommendations it provided Maplewood as to whether and when to assert claims under the Policy and other related insurance products.

98.     As the insurance broker for Maplewood, and based on the special relationship between M&T and Maplewood, M&T owed Maplewood a fiduciary duty with regard to how it handled insurance claims on behalf of Maplewood under the Policy and other related insurance products.

99.     Throughout the relevant time period, Maplewood was in frequent communication with M&T as evidenced by the frequent communications between Maplewood and M&T to ensure that Builders Risk insurance extended beyond the original expiration date of August 1, 2019 and would be available to Maplewood until completion of the Project.

100.    M&T was also aware of the SWO based upon its efforts and direction that Maplewood submit a claim against the CCIP for the Project.

101.    Because M&T was Maplewood's insurance broker, and had a special relationship with Maplewood, and because M&T was responsible for Maplewood's decision to purchase the Policy on M&T's advice and recommendation, once Maplewood timely informed M&T of the SWO as soon as it issued, Maplewood reasonably relied on M&T to properly advise Maplewood

as to whether it should assert a claim under the Policy and of the requirements, timing and otherwise, for doing so.

102.    Because M&T was Maplewood's insurance broker, and had a special relationship with Maplewood, and because M&T was responsible for Maplewood's decision to purchase the Policy on M&T's advice and recommendation, once Maplewood timely informed M&T of the SWO as soon as it issued, Maplewood reasonably relied on M&T to take appropriate steps to timely notify ACE of a claim under the Policy.

103.    M&T breached its fiduciary duty towards Maplewood by failing to provide Maplewood with timely and accurate advice relating to making a claim under the Policy, and by failing to make a timely claim with ACE under the Policy relating to the SWO.

104.    M&T further breached its fiduciary duty towards Maplewood by procuring the Policy, which contained very specific claims and suit period limitations, without ever advising Maplewood of the same.

105.    M&T further breached its fiduciary duty towards Maplewood by failing to review, investigate, and/or advise Maplewood regarding the insurance coverage available to Maplewood under the Policy for any delay of the Project.

106.    M&T further breached its fiduciary duty towards Maplewood by failing to advise Maplewood as to whether and how it should assert a claim under the Policy once Maplewood timely informed M&T of the SWO as soon as it issued.

107.    M&T further breached its fiduciary duty towards Maplewood by improperly advising Maplewood to make a direct claim against the CCIP for the Project and by not advising Maplewood to assert a claim with ACE against the Policy "as soon as practicable" after the SWO issued.

108.    M&T further breached its fiduciary duty towards Maplewood by failing to assert a claim with ACE against the Policy on behalf of Maplewood, despite Maplewood informing M&T of the SWO as soon as it was issued.

109.    M&T further breached its fiduciary duty towards Maplewood by failing to preserve Maplewood's right to assert its otherwise valid insurance claim in a legal proceeding by allowing the two-year time period set forth in Part E.21 of the Policy to lapse without making a claim, advising Maplewood to make a claim, or otherwise pursuing the insurance coverage that Maplewood was entitled to under the Policy.

110.    M&T's breach of its fiduciary duty towards Maplewood has left Maplewood unable to collect on millions of dollars in insurance coverage that it purchased relying on M&T's advice and to which it otherwise would have received.

111.    As a direct and proximate result of M&T's breach of its fiduciary duty to Maplewood, M&T has caused, and will continue to cause, Maplewood to suffer significant damages in an amount to be determined at trial.

## COUNT FOUR
## Negligent Misrepresentation

1-111.  Maplewood repeats and realleges paragraphs 1-111 of the Complaint as if stated in full herein.

112.    Maplewood has had a longstanding special relationship with M&T whereby M&T has procured insurance products for Maplewood and subsequently provided professional advice related to the types of coverage available, acceptability and applicability of exclusions, and the process of asserting claims under various insurance policies.

113.    Maplewood has consistently relied on M&T to provide it with advice relating to the Policy and others, including advice relating to the Project, the SWO, the Delay in Opening Endorsement, and the timing and manner of making claims in general.

114.    As the insurance broker for Maplewood, and based on the special relationship between M&T and Maplewood, M&T owed Maplewood a duty with regards to the insurance products it recommended to Maplewood to provide insurance coverage for Maplewood, its business, and its senior living facilities throughout the United States.

115.    As the insurance broker for Maplewood, and based on the special relationship between M&T and Maplewood, M&T owed Maplewood a duty with regards to how it handled insurance claims on behalf of Maplewood, including but not limited to the professional advice and recommendations it provided to Maplewood as to whether and when to file an insurance claim and against which insurance policy the claim should be filed.

116.    M&T represented to Maplewood that it had the expertise to recommend appropriate insurance products and other related products to provide insurance coverage for Maplewood and its senior living facilities throughout the United States.

117.    M&T owed a duty to Maplewood to not misrepresent its expertise and ability to recommend appropriate insurance products and other related products to provide insurance coverage for Maplewood and its senior living facilities throughout the United States.

118.    In making the decision to purchase insurance products and other related products at the recommendation of M&T, Maplewood reasonably relied upon M&T's experience and expertise, as well as its special relationship with M&T and M&T's detailed analysis of Maplewood's insurance requirements for its business of developing, building, and operating senior living facilities throughout the United States.

119.    In reliance on M&T's professional advice and expertise, and based on the special relationship between M&T and Maplewood, Maplewood accepted M&T's recommendations and allowed M&T to broker and procure the Policy.

120.    M&T was intimately involved with all aspects of the insurance requirements for the Project and Maplewood relied on M&T's representations that the Policy would provide all necessary and appropriate insurance coverage for the Project.

121.    At the time Maplewood purchased the Policy, M&T knew Maplewood was relying on its representations regarding the scope of the Policy and the fact the Policy would provide all necessary and appropriate insurance coverage for the Project.

122.    M&T breached its duty towards Maplewood as its insurance broker by negligently advising Maplewood that the Policy would provide all necessary and appropriate insurance coverage for the Project.

123.    M&T's representations to Maplewood that the Policy would provide all necessary and appropriate insurance coverage for the Project were false when made.

124.    Once Maplewood received the SWO from the New York City Department of Buildings, it notified M&T of the SWO.

125.    M&T negligently advised Maplewood to make a direct claim against the CCIP for the Project, which Maplewood did in reasonable reliance on M&T's recommendation and advice.

126.    At the time M&T negligently advised Maplewood to make a direct claim against the CCIP for the Project, M&T knew Maplewood was relying on M&T's expertise as Maplewood's insurance broker and on the special relationship between M&T and Maplewood.

127.    M&T's representations to Maplewood that it should make a direct claim against the CCIP for the Project were false when made.

21

128.    M&T breached its duty towards Maplewood as its insurance broker by negligently advising Maplewood to make a direct claim against the CCIP for the Project.

129.    Because M&T advised Maplewood to make a direct claim against the CCIP for the Project, which Maplewood did, and because M&T failed to advise Maplewood to assert a claim with ACE against Policy, Maplewood initially did not assert a claim with ACE against the Policy.

130.    Based on the Denial Letter from ACE, it is clear that M&T negligently misrepresented the scope of insurance coverage available to Maplewood under the Policy by failing to inform Maplewood of the claims and suit period limitations in the Policy.

131.    Based on the Denial Letter from ACE, it is clear that M&T negligently misrepresented the scope of insurance coverage available to Maplewood under the Policy for any delay of the Project by failing to advise Maplewood to make a claim, "as soon as practicable" after the SWO issued, which caused ACE to deny Maplewood's otherwise valid insurance claim.

132.    M&T knew or should have known that Maplewood would suffer substantial damages because of its misrepresentations.

133.    As a result of the foregoing, Maplewood has been damaged.

134.    As a direct and proximate result of M&T's negligent misrepresentations to Maplewood, M&T has caused, and will continue to cause, Maplewood to suffer significant damages, including irreparable damages, in an amount to be determined at trial.

**WHEREFORE**, Maplewood respectfully requests the following relief:

1.    Money damages;

2.    Interest, including prejudgment interest pursuant to N.Y. C.P.L.R. 5001

and costs; and

3.    Such other and further relief in law and equity as this court may deem

appropriate.

**PLAINTIFF,**
**MAPLEWOOD SENIOR LIVING, LLC**


By:*/s/ Peter E. Strniste, Jr.*
    Peter E. Strniste, Jr. (5373188)
    Todd R. Regan
    Christopher R. Drury (425859)
    Gordon & Rees Scully Mansukhani LLP
    95 Glastonbury Blvd., Ste. 206
    Glastonbury, CT 06033
    Tel.: (860) 278-7448
    Fax: (860) 560-0185
    pstrniste@grsm.com
    tregan@grsm.com
    cdrury@grsm.com